BENJAMIN L. CONDE, Respondent, v. THE CITY OF SCHENECTADY et al., Appellants.

1. MUNICIPAL CORPORATIONS — ASSESSMENT FOR LOCAL IMPROVEMENT — DEFECT APPARENT ON FACE OF PROCEEDINGS. If a provision of a municipal charter requiring an assessment for street paving to be apportioned upon the lots of land abutting on the street "according to the number of feet frontage upon the same" be unconstitutional as taking property without due process of law, the invalidity of an assessment made under it is apparent on the face of the proceedings, and an action in equity to set the assessment aside as a cloud on title cannot be maintained.

2. WAIVER OF CONSTITUTIONAL OBJECTION. A property owner who signs a petition for a street pavement under a charter which requires the cost to be apportioned among the owners according to frontage, necessarily asks that the work be done under the statutory rule and thereby waives any right to object to it upon the ground that it constitutes a taking of property without due process of law.

3. IRREGULARITY IN PROCEEDINGS FOR STREET IMPROVEMENT CURED BY STATUTE. An irregularity in a proceeding for a street improvement consisting in the requirement by the common council of two bonds, one to accompany the bid and to be conditioned that if the bid is accepted the bidder will enter into a contract with the city for doing the work, and the other to be executed on the award of the contract and to be conditioned for its performance, instead of following the provision of the charter which requires one bond to be given when the bid is made, and which is to cover not only the execution of the contract but its performance, will not avoid an assessment when another section of the charter provides that "every assessment for the purpose authorized by this title, shall be valid and effectual, notwithstanding any irregularity, omission or error in any of the proceedings relating to the same * * *."

4. VARIANCE BETWEEN PETITION AND ORDINANCE AS TO KIND OF PAVING MATERIAL. The variance between a petition for the paving of a street which asked for "Trinidad sheet asphalt" and the ordinance directing the street to be paved with "Asphaltum sheet pavement," the specifications requiring the material to be "refined lake asphalt" and distinctly excepting land or overflow asphalt, does not invalidate an assessment for the pavement even if the term "lake asphalt" is more comprehensive than "Trinidad asphalt" where Trinidad asphalt was actually used and there is no proof to show that the exclusion in the specifications of land and overflow asphalt was improper.

5. CITY OF SCHENECTADY — EXPENSE OF REPAVING STREET INTERSECTIONS. The amendment of section 59 of the charter of the city of Schenectady (L. 1890, ch. 294, as amd. by L. 1893, ch. 190), by omitting the provision that the cost and expense of repaving the street intersections

should be borne by the city at large, had the effect of imposing the whole cost of repaving a street on the abutting lots.

6. Method of Paying Assessment.   Under section 61 of the charter of the city of Schenectady, the determination whether an assessment for repaving a street shall be payable in installments or not is, in the absence of request by the petitioners for the improvement, vested in the common council.

*Conde* v. *City of Schenectady,* 29 App. Div. 604, reversed.

(Argued June 20, 1900; decided October 2, 1900.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the third judicial department, entered May 9, 1898, affirming a judgment in favor of plaintiff entered upon the report of a referee.

The nature of the action and the facts, so far as material, are stated in the opinion.

*S. W. Jackson* for appellants.   The Appellate Division erred in affirming the judgment below upon the ground that the ordinance and specifications for the pavement in question varied essentially from the petition of the property owners, and that, therefore, the common council had no jurisdiction to adopt such ordinance and specifications, and, therefore the assessment in question is illegal and void.   (*Bell* v. *City of Yonkers,* 78 Hun, 202; *Voght* v. *City of Buffalo,* 133 N. Y. 468; *Matter of M. L. Ins. Co.,* 89 N. Y. 535; *O'Reilly* v. *City of Kingston,* 114 N. Y. 446; *Tifft* v. *City of Buffalo,* 82 N. Y. 204; *Terrel* v. *Wheeler,* 123 N. Y. 76; *Leman* v. *Mayor, etc.,* 55 N. Y. 361; *Brown* v. *Mayor, etc.,* 63 N. Y. 239; *Cromwell* v. *McLean,* 123 N. Y. 490; *Ensign* v. *Barse,* 107 N. Y. 338.)   Plaintiff's claim that the plans and specifications were not legally made or adopted by the common council, nor approved by the mayor, and that for such reason the assessment in question is void, is not supported by law nor by the evidence.   (*Voght* v. *City of Buffalo,* 133 N. Y. 463; *Gilmore* v. *City of Utica,* 131 N. Y. 31.)   The provisions of section 72 of the charter, declaring that " every assessment for a purpose authorized by this title shall be valid and effectual,

notwithstanding any irregularity, omission or error in any of the proceedings relating to the same," make the various objections of the plaintiff's counsel to the proceedings relating to the assessment in question ineffective.   (L. 1890, ch. 294.)

*Robert J. Landon* for respondent.   The plans and specifications were invalid in that they did not conform to the directions of the ordinance as to the materials to be used and the manner of doing the work.   (*Matter of Burmeister*, 76 N. Y. 174; *Folmsbee* v. *City of Amsterdam*, 142 N. Y. 118.) Section 72 of the charter does not cure any of the objections to this assessment.   (*Gilmore* v. *City of Utica*, 131 N. Y. 26; *Ensign* v. *Barse*, 107 N. Y. 329; *Merritt* v. *Vil. of Portchester*, 71 N. Y. 314; *Jex* v. *Mayor, etc.*, 103 N. Y. 536; *Matter of Pennie*, 108 N. Y. 364; *Miller* v. *City of Amsterdam*, 149 N. Y. 288; *Sharp* v. *Spier*, 4 Hill, 76; *Matter of Douglas*, 46 N. Y. 42; *Matter of Astor*, 50 N. Y. 363; *Matter of Anderson*, 60 N. Y. 457; *May* v. *Traphagen*, 139 N. Y. 478.)   The action is maintainable to remove a cloud on plaintiff's title, to prevent the creation of a further cloud, and because the sale, if otherwise valid, would have been premature if not enjoined.   (*Marsh* v. *City of Brooklyn*, 59 N. Y. 283; *Guest* v. *City of Brooklyn*, 69 N. Y. 513; *Townsend* v. *Mayor, etc.*, 77 N. Y. 542; *King* v. *Townsend*, 141 N. Y. 361; *Mellen* v. *Mellen*, 139 N. Y. 221; *Butler* v. *Johnson*, 111 N. Y. 219; *O'Flynn* v. *Powers*, 136 N. Y. 423; *McK. B. Co.* v. *Trustees, etc.*, 15 App. Div. 139; *Poth* v. *Mayor, etc.*, 151 N. Y. 16; *Trippler* v. *Mayor, etc.*, 125 N. Y. 617.)

CULLEN, J.   This action was brought to set aside an assessment imposed for the repaving of State street, in the city of Schenectady, and to restrain a threatened sale for non-payment of the assessment.   By section 51 of the charter of the city (Chap. 385, Laws of 1862, as amended by chap. 294, Laws of 1890; chap. 190, Laws of 1893) it is provided that no ordinance shall be adopted directing the pavement of the car-

riageway of a street with any other material than cobble stone,
broken stone or gravel, except upon a petition in writing,
duly proved and acknowledged, by owners of lots abutting on
the street constituting at least one-fourth of the frontage
thereon.    By sections 52 and 53 it is further provided that
no ordinance shall be adopted until a hearing has been given
all persons interested after publication of the proposed
ordinance.    In July, 1894, a petition was presented to the
common council, signed by the plaintiff and others, asking for
the paving of State street with Trinidad sheet asphalt pave-
ment, excepting the space occupied by the railroad tracks,
which it was asked should be paved with granite blocks.
Thereupon the common council adopted a proposed ordinance
for paving the street with "asphalt sheet pavement."    After
publication and a hearing, the common council, on July 31st,
enacted the proposed ordinance.    The common council then
adopted specifications for the work by which it prescribed that
the paving should be laid of " the best quality of refined Lake
Asphalt (distinctly excepting land or overflow asphalt) and
heavy petroleum oil, unmixed with any of the products of
coal tar."    Bids for the work were advertised for.    The con-
tract was awarded to the Metropolitan Paving and Construc-
tion Company of the city of New York, which was the lowest
bidder.    The street was repaved under this contract with
Trinidad asphalt, and an assessment for the cost laid on the
abutting property.    No attack on the character of the work is
made, and no proof was adduced showing any fraud in the
award of the contract or in the charge made for the work
thereunder.    The assessment, however, is alleged to be void
because of irregularities and illegalities committed by the
common council in the proceedings to effect the improvement
and in laying the assessment therefor, which invalidity it
is contended will not appear on the face of the proceedings,
since by the charter the resolution of the common council
making the assessment is presumptive evidence in all courts
that the assessment was legally imposed, and that all notices
and proceedings required therefor were duly given and taken.

The points of attack on the assessment are numerous, and it is necessary to consider them in detail.

The charter (Section 59) requires the cost of the improvement to be apportioned upon the lots of land abutting on the street, " according to the number of feet frontage upon the same." It is claimed that such a rule of assessment is determined by the Supreme Court of the United States (*Norwood v. Baker*, 172 U. S. 269) to be in contravention of the Federal Constitution as taking property without due process of law. We think that a plain distinction can be drawn between the *Norwood* case and the one before us. In the former, the improvement was the opening of a street through the lands of the plaintiff, in which he was undoubtedly entitled to compensation for the land taken, a right of which he could not be constitutionally deprived. The same statute authorized the local authorities to assess the cost of the improvement and the expense of the proceeding upon the remaining lands of the plaintiff according to frontage and regardless of benefit. The effect of this double proceeding of eminent domain and taxation was that the plaintiff lost his land without compensation, and was compelled to pay the expense of having the land taken away from him. These provisions of law were held to violate the Federal Constitution. In the present case no land is taken from the plaintiff. The proceeding is purely in the exercise of the power of taxation. That the land abutting on the street is benefited by the pavement or repavement of the street and should bear the expense seems very clear. Even where no provision is made by law for the apportionment of the expense according to the frontage of the land abutting on the street, the equity of the principle is so apparent that the rule has been almost universally adopted through the municipalities of this state. The case differs from the opening of a street or avenue, the main object of which improvement may, in special cases, be not to benefit the abutting land, but to afford access and communication between separate parts of the city or village, and thus inure to the advantage of the whole municipality. It seems to us that this distinction is justified

by the previous decision of the Supreme Court in *Parsons* v. *District of Columbia* (170 U. S. 45), and *Leominster* v. *Conant* (139 Mass. 384), the latter of which is cited with approval in the *Norwood* and *Parsons* cases. But whether the distinction sought to be drawn is well or ill founded, there are two sufficient answers to the plaintiff's claim in this respect. *First.* If the statute is unconstitutional and void the invalidity of the assessment is apparent, and an action in equity to set it aside as a cloud upon title cannot be maintained. (*Stuart* v. *Palmer*, 74 N. Y. 183.) *Second.* The plaintiff was one of the petitioners for the improvement. The only power the city had in the premises was to do the work at the cost of the abutting owners, to be apportioned among them according to frontage. He necessarily asked that the work be done under that statutory rule, and thereby waived any question as to its constitutionality. A party may waive the benefit of a constitutional provision in his favor. (*Vose* v. *Cockcroft*, 44 N. Y. 415.)

The ground on which the learned referee held the assessment bad was that the common council in its advertisement for proposals required a proposal to be accompanied by a bond conditioned that if the proposal should be accepted the bidder would enter into a contract with the city for doing the work at the prices stated and give a further bond for its performance, while section 58 of the charter directs that no proposal shall be considered which is not accompanied by a bond conditioned that if the proposal be accepted the person making the same will not only enter into contract for the performance of the work, but also perform the same. In other words, the scheme provided by the charter was that only one bond should be given when a bid was made on the work which was to cover not only the execution of a contract, but its performance; while the course taken by the common council was to require two bonds, one to accompany the bid, the other to be executed on the award of the contract. The referee held that by this departure from the method prescribed by the statute the common council lost jurisdiction to carry out the improvement. We concede the course of the common council to have

been irregular, and we may further concede, for the purposes of the argument, that the irregularity would have been fatal except for other provisions of the charter. Section 72 provides that "Every assessment for a purpose authorized by this title shall be valid and effectual notwithstanding any irregularity, omission or error in any of the proceedings relating to the same. * * * Whenever it shall be deemed by the common council or be determined by the judgment of a court of competent jurisdiction that any assessment authorized by this title is illegal or void for want of jurisdiction, or for any other cause, the common council may pass an ordinance designating the work so made or done, the whole expense thereof, and the part or portion of the city deemed to be benefited thereby, or equitably chargeable with the costs and expense thereof, and may assess the several lots or parcels of land in the territory so designated in said ordinance, according to the benefits received or in the proportion in which they are equitably chargeable therefor." This is a curative act of the most comprehensive character; indeed, it is much more than a curative act. A curative act is a retrospective statute. Here the same statute which prescribes certain formalities and requirements to be observed in making local improvements and in imposing assessments therefor, provides that irregularities or illegalities in the proceedings, *i. e.*, failure to comply with these requirements and formalities, shall not invalidate the assessment. Therefore, any informality that the legislature might have originally dispensed with cannot avoid the assessment. (*Ensign* v. *Barse*, 107 N. Y. 329.) It was doubtless the duty of the common council to have strictly conformed to the law in the prosecution of this improvement, and had the plaintiff timely intervened by a taxpayer's action he could have restrained the common council from acting in contravention of the statute, but he could not lie by and await the completion of the improvement and then escape the assessment because of irregularities or defects in the proceedings. It was this very evil that the section of the charter cited was intended to prevent.

The learned Appellate Division did not pass upon the point on which the case was decided by the referee, but affirmed the judgment upon another ground. That court held that the common council had no jurisdiction to adopt an ordinance for any other kind of pavement than that which was called for by the petition, and that in the ordinance there was a substantial departure from the petition. The petition asked for "Trinidad Sheet Asphalt;" the ordinance directed the street to be paved with "Asphaltum Sheet pavement." The specifications required the material to be "Refined Lake Asphalt" distinctly excepting "land or overflow asphaltum." The street was actually paved with Trinidad lake asphalt. The Appellate Division took notice that lake asphalt was Trinidad asphalt, but was of opinion that in excluding the land or overflow asphalt there was a departure from the terms of the petition which tended to restrict competition and might have enhanced the cost of the work. We cannot agree with this view. While it may be that we cannot take notice that lake asphalt and Trinidad asphalt are the same there is no proof that they are different materials. The plaintiff got exactly what he asked for, Trinidad asphalt. For this reason if the term "Lake Asphalt" is more comprehensive than "Trinidad Asphalt" it worked no injury to the petitioners, and if it had any effect on the bidding it must have increased the competition. By section 57 of the charter, the common council was authorized to make plans and specifications for the improvement. There is no proof to show that the exclusion of "Land and overflow asphalt" was an improper requirement. If the petition had been for wooden blocks, the specifications might properly exclude those kinds of wood which are not fit for pavement; and even had it specified oak blocks, it would have been within the power of the common council to exclude inferior kinds of oak. Further, under the view we have already expressed, the time for the plaintiff to have raised any objection was at the inception of the work.

Section 59 of the charter as enacted in 1890 provided that the cost and expense of repaving the street intersections

should be borne by the city at large. This section was amended in 1893 (Chapter 190) by omitting the provision quoted. The effect of this amendment was to impose the whole cost of the improvement on the abutting lots. There was, therefore, no error in the assessment in this respect. Under section 61 the determination whether the assessment should be payable in installments or not was, in the absence of request by the petitioners for the improvement (there was none in this case), vested in the common council. The other irregularities complained of we shall not discuss. Some of these alleged irregularities we think are not such, and the others are cured so far as the validity of the assessment is concerned by the provisions of section 72.

The judgment appealed from should be reversed and a new trial granted, costs to abide the final award of costs.

PARKER, Ch. J., O'BRIEN, BARTLETT, VANN and WERNER, JJ., concur; LANDON, J., not sitting.

Judgment reversed, etc.