(64 App. Div. 316.)

PEOPLE ex rel. SCOTT v. PITT et al., Sewer Com'rs.

(Supreme Court, Appellate Division, Second Department.   October 4, 1901.)

MUNICIPAL CORPORATIONS—SEWER ASSESSMENTS—CONSTITUTIONAL LAW.

    Laws 1888, c. 311, § 16, provides that owners of property abutting on a sewer shall pay the average cost of laying a certain-sized pipe in front of their premises, the excess in cost to be paid by the city. Laws 1899, c. 128, § 208, provides that a certain sum per each linear foot of sewer shall be paid by abutting property owners, and that the tax shall be assessed one-half on property fronting on each side of the street, exempting property that cannot connect with such sewer.   Section 210 declares that on the hearing to be given to those interested the commissioners shall make such corrections in the assessment roll as will render it just.   *Held*, that a tax laid under such provisions was not a taking of property without due process of law.

Certiorari proceedings by the people, on the relation of Robert H. Scott, against William R. Pitt and others, constituting the board of sewer commissioners of the city of New Rochelle, to determine the validity of an assessment for local improvements.   Dismissed.

Argued before GOODRICH, P. J., and WOODWARD, HIRSCHBERG, and SEWELL, JJ.

Charles H. Young, for relator.
Michael J. Tierney, for respondents.

WOODWARD, J.   In 1888 the legislature enacted chapter 311 of the Laws of that year, entitled "An act to provide for the construction of a system of sewerage for the village of New Rochelle."   This act provided for the election of nine commissioners of sewers and drainage, who were to employ an engineer, who was to "prepare maps, profiles, plans, and specifications for a pipe system of sewers for the entire village of New Rochelle, which system shall be used for the purpose of sanitary sewerage and cellar drainage."   It was also provided that plans and specifications should be provided for surface drainage, but this is only of incidental importance.   The statute provided that the village should be laid off into sewer districts, to be indicated on maps to be properly filed, and the sewer commissioners were charged with the duty of determining which of the districts should be sewered, to procure estimates of the cost of sewering such districts or parts thereof, the plans for which should be approved by the state board of health, and exhibited to the taxpayers of the said village.   Then the proposition was to be submitted to the taxpayers of such village to be voted upon, and, if approved, the work was to be undertaken.   By section 15 of the act it was provided that "for the purpose of defraying the cost of the construction of said sewers and drains and all expenditures authorized by this act, including the compensation to be paid and expenses incurred in proceedings to acquire title to lands, or a right of way under and across any property, or for damages to private property, bonds and certificates of indebtedness of the village of New Rochelle to such an amount as shall be necessary, not, however, exceeding the estimated cost as voted for as hereinbefore provided, shall be issued by the board of trustees of the village of New Rochelle," etc.   The succeeding section

provided that, "to meet the payment of the above-named certificates of indebtedness, there shall be levied and assessed by the commissioners of sewers and drainage" a "direct assessment per lineal foot upon property fronting on the street through which any sewer may be built, a sum not to exceed the average cost of providing and laying each lineal foot of an eight-inch pipe, to be assessed one-half on each side of the street, exempting, however, such property as cannot drain into said sewer. In cases where property may be situated on a corner, or may have a frontage on two sewer lines, or where there may be an inequality in other respects regarding the advantage to be derived from said sewer, the commissioners shall determine the amount of the assessment." The next section provided that upon "the completion by the commission of any area of assessment, and the assessment thereof," the commissioners were to give notice of the fact, and to appoint a grievance day, etc. Section 21 of the act provided that "all expenditures made and indebtedness incurred in the construction of the sewers and drains hereunder, or in any manner connecting therewith, not covered by the direct and benefit assessment and paid out of the proceeds of the sales of the certificates of indebtedness, shall be a general tax upon the village of New Rochelle, and paid out of the proceeds of the sale of the bonds herein provided for." It is evident from the provisions of the statute that it contemplated the construction of what is known as a "separate sewer system," calculated to take care of the sewage proper, leaving the drainage system to be separately provided for; and the provision for determining the amount of the direct assessment by the average cost of putting in an 8-inch sewer would indicate that the main or trunk sewer was intended to be at least 24 inches. It is also evident that the scheme contemplated a special benefit upon the adjacent properties of approximately one-half of the cost of the system as a whole, whether the pipe in front of any given premises should be 4 inches or 24 inches, which is manifestly an equitable method of distributing the burden of sewer construction, if it be conceded that the premises immediately fronting upon the sewered street are specially benefited; and it seems too late to raise this question, as it is deeply imbedded in the municipal policy of the state, and has long had judicial sanction. Conde v. City of Schenectady, 164 N. Y. 258, 262, 58 N. E. 130.

Acting under the provisions of this statute, the salient features of which we have pointed out by way of introduction to the question here presented, the village of New Rochelle, through its sewer commissioners, devised a system of sewers "for the entire village of New Rochelle" (section 7, c. 311, Laws 1888), "which scheme, system, map and plan of such sewer was submitted to and approved by the state board of health of the state of New York on the 18th day of December, 1888, and contemplated, comprised, and contained twenty-six and fifty-one hundredths miles of such sewer through various of the streets and other places in the then village of New Rochelle, including the said part of said Main street in front of and abutting upon petitioner's said property." (Return to the writ of certiorari, par. 14.) 24.68 miles of the sewer contem-

plated by such scheme or system have thus far been constructed, and are now being used by the inhabitants of the city of New Rochelle; the major portion having been constructed by the village of New Rochelle. In aid of payment for the sewer so constructed, direct taxes or assessments to the amount of $331,051.86 have been levied upon the property abutting upon the streets so sewered, of which sum there has been collected from the owners of the said abutting property so assessed the sum of $265,517.90, and the bonds of the village and city of New Rochelle have been issued to the amount of $318,000, this latter sum representing the cost of the construction of the sewers thus far put in over and above the total amount represented by the direct tax levied upon the abutting property. These bonds have been sold, and the money has been applied to the payment of the cost of construction of the system of sewers as originally contemplated by the plans drawn by the engineer for the village of New Rochelle, and which had been completed with the exception of about two miles, when the city of New Rochelle became the successor of the village of New Rochelle, under the provisions of chapter 128 of the Laws of 1899. The charter of the city of New Rochelle provides for the creation of commissioners of sewers, a board of sewer commissioners, etc., and section 203 of chapter 128 of the Laws of 1899 provides:

"Before taking any proceedings for the construction of a sewer in any additional sewer system in any part or district of said city not included in any existing sewer system in said city, the board shall cause a map and plan of a permanent addition to the sewer system of said city to be made," etc.

Section 204 then provides that:

"The common council may authorize and direct the said commissioners to sewer any street or section of said city within the bounds of any existing sewer district or system in said city for which an outlet or disposal works is now provided and built, or a connection with a main sewer can be made whenever the same is petitioned for by a majority of the property owners on such street or in such section, or when the city board of health declares the same to be necessary for the public health, and the said commissioners shall, after being so authorized and directed, proceed to construct such sewers in the manner provided by this act."

On the 29th day of November, 1899, the commissioners of health of the city of New Rochelle, comprising the board of health, at a regular meeting declared and resolved "that it is hereby declared necessary for the public health that the following named streets and avenues of the city of New Rochelle [including the street in front·of the premises of the relator] be sewered, an outlet or disposal works being now provided and built therefor; and that the interest of the public health demands the construction or laying of the public sewer in the said streets and avenues, or that portion thereof herein above set forth." Subsequently, and on the 5th day of December, 1899, the common council directed that these sewers be constructed; "the parts of said streets so ordered sewered were and are within the bounds of the previously established and existing sewer district or system of the said city of New Rochelle for which an outlet or disposal works was provided, built, and maintained." The sewer was duly constructed under the provisions of the charter, pursuant to the

above action, and on the 26th day of September, 1900, the board of sewer commissioners met, and resolved "that, in accordance with the provisions of section 208 of the charter of the city of New Rochelle, the commissioners of sewers hereby declare that for the construction of the sewers as recently laid  *  *  * ' there is hereby assessed and levied the sum of one and seventy one-hundredths dollars on each foot of property located or fronting on each side of the aforesaid streets, roads, and avenues, or on property drained by said sewers." At the same time the secretary was directed to give notice, "as required by law, that said assessment roll for the tax aforesaid is open for the inspection of the taxpayers at the office of the commissioners of sewers for the required number of days, and that the commissioners will meet on the 26th day of October, 1900, at 8 o'clock p. m. of that day, to hear such persons as may consider themselves aggrieved in relation to said assessment, as provided by section 210 of the charter of the city of New Rochelle," etc. The notice was duly published in the official newspapers; the commissioners met and adjourned from day to day, heard those who felt themselves aggrieved, and made such corrections in the assessment roll containing such assessments as in their judgment were just and equitable, and on the 16th day of November, 1900, confirmed and adopted the corrected assessment roll, and subsequently attached their warrant for the collection of the same, and delivered it to the proper officials for collection.

The relator urges that the provisions of section 208 of chapter 128 of the Laws of 1899 are unconstitutional and void, in that said section arbitrarily fixes an assessment on the petitioner's property, without allowing the petitioner any opportunity to be heard as to the cost or value of said improvement provided for by said assessment, or the fairness or justness of said assessment, and that said assessment levied herein under that section is levied without due process of law. We are unable to agree with the relator in this position. There is no suggestion in his moving papers that he is not benefited by the' construction of these sewers, or that he will sustain any injustice by reason of the same; and his whole contention is based upon the proposition that the fixing of a specific sum per front foot is an arbitrary taking of his property (the amount of the tax) without due process of law. If we look to the scheme of the statute under consideration, however, we shall find that there has been no arbitrary fixing of this amount. The original statute provided for a system of sewers for the entire village of New Rochelle, and the abutting property owners were to pay the average cost of laying an eight-inch sewer pipe in front of their premises. It is a well-known fact that in the practical work of laying sewers it costs in some instances two or three times as much to lay a foot of sewer pipe, even of the same dimensions, as in other cases. This is due to the difference in the formation of the earth, quicksands, hard rock, etc., all entering into the problem. It is also obvious that the expense of main sewers is much larger than that of laterals, and that the cost of disposing of the sewage is an important consideration, often involving the purchase of rights, easements, etc. The plan developed by the village

of New Rochelle was to equalize this by making the average cost of laying an eight-inch pipe the basis of calculation, leaving the village as a whole to take care of the extra cost for main sewers, disposal works, rights of way, easements, etc. Acting under this plan, the village had laid out a general sewer system, embracing something over 26 miles of streets and avenues, and a large portion of this work had been done and paid for by the abutting owners and the village when the city charter came into effect; and it had been ascertained that the average cost of laying an eight-inch sewer pipe in the streets of New Rochelle was $3.40 per linear foot, one-half of which was paid by the abutting owner on either side of the street, for we find it recited in section 208 of the city charter that "any property exempt from the direct tax assessed aforesaid, either wholly or partially, or which may have hitherto been exempt that shall subsequently be improved or so situated that it can be connected with the sewers wholly or partially, the owner shall, before any connection with any such property be made with the sewers, pay to the city treasurer the amount of the direct tax or assessment per linear foot that was assessed against other property similarly situated; in other words, one dollar and seventy cents per linear foot." The property of the relator was embraced within the limits of the original sewer system of the village of New Rochelle, and the statute puts him upon the exact basis with the other residents and taxpayers of the city by requiring him to pay the same average price per foot front which has heretofore been paid by his neighbors. Whatever is lacking in the cost of construction of the sewer system is paid by a general tax, and it would be most unjust and inequitable for this court to hold that the relator, who has stood by and seen this sewer constructed to the benefit of his premises, is entitled to relief in this proceeding. Over $300,000 has been paid upon the same basis as that prescribed by the statute for the relator, and $318,000 has been expended, to be paid for by a general tax; and, now that the relator has received the benefit of this public improvement, it is only fair and just that he should participate in the burden equally with all others similarly situated.

If the entire expense of constructing the sewer system were placed upon the abutting owner, and the legislature had arbitrarily fixed a figure to be paid, regardless of the cost of the improvement, there might be something in the contention that the relator was being deprived of his property without due process of law; but this is not the case. A fixed portion of the cost of construction, based upon the average cost of laying one foot of sewer of eight inches, and which has been paid in common by all property owners abutting upon the sewer system, is provided for by the statute, and the city pays by a general tax for all in excess of this amount; the proportion being, as appears from the figures given by the respondents, about one-half. The relator was not entitled to any hearing upon the question of the cost of construction in front of his premises. This could not determine the equitable portion of the expense of the system as a whole; and the respondents show that the costs of construction in front of his premises, if this were permitted, was $4,087.20, while the portion of direct tax which he seeks to escape is less than $600. The relator

had a full opportunity to be heard before the assessment was confirmed. He had notice of the meeting for the hearing of grievances, and he, in company with others, filed a protest against the assessment, not on the ground that the assessment was not in accordance with due process of law, but on the ground that the sewer "has been constructed without legal authority on part of your board, without legal right, and without the consent of the undersigned; and that the said assessment is illegal and void; and that we object and protest against the levying of said assessment, and to the confirming of the assessment roll for the said assessment." The relator contends, however, that this notice was not effectual, because, the amount of the assessment being fixed by the statute, it was of no avail to him to have notice of the grievance day. If the construction of the sewer was illegal,—if the board had no power under the law to act,—then the relator, as a taxpayer in the city, had a right of action to prevent waste (section 1925 of the Code of Civil Procedure), which would have protected his own special rights in the premises. Having neglected to take any steps to prevent the construction, and being in a position to receive the benefits, he is not in a strong equitable position; and we are of opinion that section 208 of the charter of the city of New Rochelle gave him some very substantial rights which might have been presented on the grievance day, and that it meets the requirements of due process of law under the facts now before us. The section provides:

"There shall be assessed and levied by the board of sewer commissioners by direct tax or assessment on the property located or fronting on the street, road, lane or alley, through which any sewer may be laid or built, or on property draining therein, for each linear foot of sewers built within said street, road, lane or alley, three dollars and forty cents per linear foot of sewers laid or built under the provisions of this article, and when any sewer shall be completed in any street, road, lane or alley the commissioners may levy and assess such tax on the property thereon fronting as aforesaid or draining therein; the tax to be assessed one-half on property fronting on each side of such streets, roads, lanes or alleys, per lineal foot of said frontage, or on property draining therein; exempting from such tax or assessment property so situated that it cannot connect with or use the sewers for any of the purposes for which said sewers were built. The commissioners shall have power to assess a proportionate amount of such direct tax as aforesaid upon property that can connect and use the sewers partially for the purpose for which the sewers were built, and determine the proportion of the tax to be assessed for such particular benefit or use. Any property exempt from the direct tax assessed aforesaid, either wholly or partially, or which may have hitherto been exempt that shall subsequently be improved or so situated that it can be connected with the sewers wholly or partially, the owner shall, before any connection of any such property be made with the sewers, pay to the city-treasurer the amount of the direct tax or assessment per linear foot that was assessed against other property similarly situated; in other words, one dollar and seventy cents per linear foot. Property situated on street corners shall be exempt from such direct tax or assessment on one side of the same, not to exceed seventy-five feet on each side; the commissioners of sewers shall have power to determine and decide upon which side of said property aforesaid the exemption shall be made, and shall not in any event exempt more than one side of such property so situated."

By section 210 of the charter it is provided that upon the hearing which is directed to be given to those interested the commissioners

"shall make such corrections in the assessment roll as will, in their judgment, render the assessment roll just and equitable"; so that it will be seen that the statute contemplates that all of the rights of the parties shall be determined after a hearing, in the same sense that the rights of parties are adjudged in any assessment roll. In the ordinary assessment roll it is the duty of assessors to fix upon the value of the premises. In the one now before us the number of feet of frontage, subject to such equities as the law points out, and in both cases the final judgment of the assessors, after a hearing, is conclusive, provided they have acted within the law. In the one case the rate per cent. to be levied upon such assessment is fixed by the amount of money to be raised, while in the case at bar the rate is fixed by the average cost of laying one foot of eight-inch sewer pipe, which has been determined by experience, based upon an almost completed system of sewers, to be $3.40, one-half to be levied against the property on either side of the street. The legislature, in prescribing this action, exercised the same power that it annually exerts in providing for the levying of a certain rate per cent. upon the taxable property of the state for general purposes. The proceeding is purely in the exercise of the power of taxation (Conde v. City of Schenectady, 164 N. Y. 258, 262, 58 N. E. 130), and there is no provision of the constitution with which we are familiar which makes it necessary that the relator should have an opportunity to be heard upon the question of the cost of laying sewers in front of his premises under the circumstances in this case. It would hardly be questioned that the legislature had the constitutional right to say that in the construction of sewers the abutting owners of property should pay one-half of the expense of the sewer system,—which was practically the result obtained in the application of the rule laid down in the act creating the sewer commissioners for the village of New Rochelle; and it does not appear that the case is presented in a different light because, after determining the average cost of laying one foot of eight-inch sewer pipe, the legislature has made such cost the rate to be exacted for each foot of frontage. To illustrate: If the legislature should enact that highway taxes should be levied and assessed at the rate of one mill for each foot of frontage, such tax would be as free from constitutional objection as though it were based upon the property value, and the only question open to review would be the number of feet of frontage; while in the case of a property value tax the only question open is that of valuation, and upon this point the final judgment of the assessors, acting within the law, is conclusive. Of course, all taxation finds its justification and constitutional sanction in the fact that it is raised for public purposes, and it might be that an arbitrary assessment of $1.70 per foot of frontage for a sewer system which would cost less than this amount would be objectionable; but when it is remembered that this special assessment is sufficient only for a portion of the cost, the remainder, equal to approximately one-half, to be made up by a general tax upon the property of the community, it cannot be said that the tax is not levied and assessed for a public purpose, and the amount of the cost of construction is not one which, under any system of taxation, is

open to the taxpayer upon the review day. A certain amount of money is to be raised for a public purpose. The question of how that burden is to be distributed, and the purposes for which it is to be used, are for legislative determination. All of the rights of the taxpayer have been regarded when he has been given notice of the assessment, and has had an opportunity to be heard, and to show in what respect, if in any, the assessment operates unjustly upon himself as compared with his neighbors or others under the same or similar circumstances, or in what particular he may be exempt from the general rule. All of these opportunities were presented to the relator, and these opportunities, in the contemplation of taxing laws, constitute due process of law.

The rules applicable to the question here presented were fully discussed and applied in the case of People v. Mayor, etc., of City of Brooklyn, 4 N. Y. 419, 55 Am. Dec. 266, and have been since followed and approved in a long line of cases, and it seems hardly necessary to refer to them in detail at this time. It is sufficient to say, in the language of the court, that:

"The power of taxation and of apportioning taxation, or of assigning to each individual his share of the burden, is vested exclusively in the legislature, unless this power is limited or restrained by some constitutional provision. The power of taxing and the power of apportioning taxation are identical and inseparable. Taxes cannot be laid without apportionment; and the power of apportionment is therefore unlimited, unless it is restrained as a part of the power of taxation. There is not, and since the original organization of the state government there has not been, any such constitutional limitation or restraint."

The certiorari proceeding should be dismissed, and the assessment as made confirmed.

Writ of certiorari dismissed, and assessment confirmed, with $50 costs and disbursements. All concur.