LOOMIS v. CITY OF LITTLE FALLS et al.

(Supreme Court, Appellate Division, Fourth Department. November 12, 1901.)

1. MUNICIPAL CORPORATIONS — STREET IMPROVEMENTS — VALIDITY OF SPECIAL ASSESSMENT.

A city charter provided that no expenditure should be made for sewers, unless the council should first by resolution declare its intention to make the improvement; that the engineer should make a survey, and prepare a map and estimate, and file the same with the clerk, who should sign a notice specifying the time within which objections might be filed, which should not expire before the next regular meeting of the council, and should publish the same at least once in each of the official newspapers at least 10 days before the expiration of the time for filing objections; that, if no objections were filed, the council might order the improvement at any regular meeting. In a particular case the notice was prepared by the engineer, who signed the clerk's name to it without objection on his part. Such notice stated that the map, etc., would be on file on the day after its date, and it was published the first time on the day of its date, but again two days later in both papers. Objections were required to be filed before the date of an adjourned regular meeting of the council, and at such meeting, no objections having been filed,

the improvement was ordered. *Held,* that none of such irregularities affected any substantial right of property owners, or rendered a special assessment for the improvement invalid; the adjourned meeting of the council being a "regular" meeting within the meaning of the charter.

**2. SAME—COST OF GRADING.**

Although a city charter, in authorizing the paving, etc., of streets to be paid for by special assessments, makes no mention of grading, yet a property owner who .petitions for the paving of a street and its grading preparatory thereto, to be paid for by assessments, will not be heard to object to the validity of an assessment therefor, after the improvement has been made, on the ground that the city had no legal power to include the cost of grading in such assessment.

**3. SAME—LATERAL WATER AND SEWER PIPES.**

Under a city charter which gives the council power to assess the cost of lateral water service and sewer pipes upon the adjoining property only where the property owner neglects or refuses to make such improvement himself, where property owners who have petitioned for the improvement permit the city to lay such pipes without objection, they may properly be considered as having neglected to lay them, and cannot object to the validity of an assessment therefor.

**4. SAME—PROCEEDINGS FOR ASCERTAINING COST OF IMPROVEMENT.**

The courts will not set aside a special assessment on the ground that the cost of the improvement was determined on insufficient evidence, where the city charter makes no provision as to the manner of ascertaining such cost, and it does not appear that the officers acted dishonestly, or that the assessment is in fact too large.

**5. SAME—LIMITATION OF ACTION TO SET ASIDE ASSESSMENT—CONSTITUTIONALITY OF STATUTE.**

A city charter provided that no action to set aside any assessment should be maintained unless commenced within 30 days after the delivery of the assessment roll and warrant to the city treasurer and the publication of notice by him, nor unless an injunction should be procured within the 30 days restraining the council from issuing the assessment bonds provided for. *Held* that, aside from the part relating to an injunction, such provision was constitutional as applied' to improvements made after its enactment, and that a property owner could not maintain an action to set aside an assessment after the 30 days had expired and the bonds had been issued and sold.

**6. SAME—IRREGULARITIES—CURATIVE STATUTE.**

The legislature may by a subsequent act cure irregularities in the, proceedings of city officers in making local improvements and levying a special assessment therefor, where such irregularities might have been made immaterial by a previous statute, and such act will be effective, notwithstanding the previous rendition of a judgment declaring the assessment invalid because of such defects.

**7. SAME—ACTIONS TO SET ASIDE ASSESSMENTS—LACHES.**

Courts are not inclined to set aside special assessments for street improvements which were solicited by the property owners, including the party attacking the assessment, and which have been completed by the city by the expenditure of money and the incurring of obligations which must otherwise be paid by the general taxpayers, and where the plaintiff stood by and made no objection.

Appeal from trial term, Herkimer county.

Action by Watts T. Loomis against the city of Little Falls and another. Judgment for plaintiff, and defendants appeals. Reversed.

Argued before ADAMS, P. J., and McLENNAN, SPRING, and WILLIAMS, JJ.

George J. O'Connor, for appellants.

J. D. Beckwith, for respondent.

WILLIAMS, J. The judgment appealed from should be reversed, and a new trial ordered before another referee, with costs to appellants to abide event. The action was brought to set aside a certain local assessment as a cloud upon title of real property. The assessment was for three purposes: (1) For a sewer in Whited and Loomis streets; (2) for grading Whited street; (3) for locating water service and sewer pipes in Whited and Loomis streets,—in the city of Little Falls.

1. As to the sewer itself, section 68 of the charter of Little Falls (chapter 565, Laws 1895, as amended by chapter 199, Laws 1898) provides in effect that no expenditure shall be made unless the common council shall first by resolution declare its intention to make the improvement. Section 70 provides that the city engineer shall forthwith, upon the passage of the resolution, make a survey and map and estimate, and shall file such map, profile, and estimate with the city clerk before the clerk shall publish or serve notice of the proposed improvement. Section 71 provides that, upon the filing by the city engineer of the map, profile, and estimate, the clerk shall prepare and sign a written notice of the proposed improvement, specifying the time during which any person interested may file his objection thereto with the city clerk, which shall not expire before the next regular meeting of the common council, and, in case no objection is filed within that time, all persons interested will be deemed to have acquiesced in the proposed improvement, and such notice shall either be published at least once in each of the official newspapers of the city, at least ten days before the expiration of the time for objecting thereto, or shall be personally served on the property owners. Section 72 provides that objections to the improvement must be in writing and filed with the city clerk within the time specified in the notice, and the common council may at any regular meeting within two months after the expiration of the ten days order the improvement to be made by the board of public works.

In this case the common council passed its resolution April 12, 1898. The city engineer prepared his map, profile, and estimate, and filed same with the city clerk May 6, 1898. The notice of the city clerk was never prepared or signed by him. It was prepared by the city engineer. The clerk's name was signed to it by him, and he directed its publication in the city official newspapers,—in one of them on May 6, 1898, and May 13, 1898, and in the other May 5, May 6, and May 7, 1898. The notice bore date May 5, 1898, and stated that the maps, profile, and estimate would be on file in the office of the city clerk on and after May 6, 1898, and specified the time during which the objections might be filed as on or before May 17, 1898, when the common council's regularly adjourned meeting would be held. The regular meetings of the common council, other than adjourned meetings, were held on the first Tuesdays of each month. May 17, 1898, was the third Tuesday. No objections were filed prior to the adjourned meeting of May 17, 1898, and at that meeting the common council ordered the improvement to be made. The notice as published appeared to be signed by the city clerk. No injury resulted to any one by its having been prepared

and his name signed to it by the city engineer. The engineer assumed to act for the city clerk. The clerk made no objection to his so acting, and we are unable to see how any one was injured by the formal preparation of the notice. Nor do we think the fact that the notice was dated May 5th, while the maps, profile, and estimate were not filed until May 6th, and that the notice was published in one of the papers May 5th, was of any significance. The notice was sufficiently published, after the maps, profile, and estimate were filed, to comply with the law.

It is said that the time for filing objections was improperly limited to the holding of an adjourned meeting, and that the order for the improvement was improperly made at such adjourned meeting. The provision of the statute is a "regular meeting." The charter permitted the common council to fix the time of the holding of its meetings, and we see no reason why the common council might not fix May 17, 1898, as a time for holding a regular meeting, and designate it as a regular meeting. It was regular to the extent that any ordinary business could be transacted at it, as distinguished from a special meeting, at which only the specific business could be done for which the meeting was called. Counsel for the respondent, in his brief presented to this court, concedes that the common council had power at the adjourned meeting to order the improvement made. If this be conceded when the statute provides the order shall be made at a regular meeting, then we see no reason why the limitation of the time for making objections may not be at an adjourned meeting also. A meeting regular for the one purpose must be regular for the other.

2. As to the grading of Whited street, the same criticisms are made as to the proceedings that we have referred to in reference to the sewer in Whited and Loomis streets; and it is claimed, moreover, that this work is not one of the improvements which under the charter are payable wholly or partly by local assessment. It is true that grading is not in the charter (section 67) specified. Only paving, repaving, and macadamizing are referred to in the statute, and possibly it might not be regarded as incidental to these improvements to prepare the street by grading it; but in this case the plaintiff signed the petition to the common council asking that the improvement in question be made, and therein requested such grading, among other things, to be done, and stated that the cost of the improvement would be a tax upon the adjoining property, and not upon the public. The plaintiff, in view of his position here, ought not to be heard to say now that this improvement was not one for which he as a property owner may be assessed. Conde v. City of Schenectady, 164 N. Y. 258, 58 N. E. 130.

3. As to the lateral water service and sewer pipes in Whited and Loomis streets, the charter undoubtedly confers upon the common council power to make these improvements, and assess upon the property benefited, only in case of a refusal or neglect by the property owners themselves to make such improvements. Section 101. In this case the board of public works evidently acted upon the theory that the property owners, including the plaintiff, having peti-

tioned for the improvement of Whited street, and having failed themselves to lay the lateral pipes, had neglected to do so within the meaning of the charter. The property owners, having stood by and seen the board do the work, and having had the benefit of the same, ought not now to be heard to question the assessment on the ground that the board had not power to make this part of the improvement under section 101 of the charter. People v. Many, 89 Hun, 138, 35 N. Y. Supp. 78.

It is claimed that the assessment was invalid by reason of the manner of ascertaining the costs of the improvements, which pursuant to section 73 and section 101 of the charter, was the amount to be assessed. The assessors had the statement and certificate of the city engineer as to the different items, and evidence was given by the city engineer and assessors upon the subject. No proof was given that the amount included in the assessment was too large, nor is it claimed that the city attorney or assessors acted dishonestly in the matter in any respect. The claim is merely that they did not know, and had no means of ascertaining, what the improvements actually cost and what the amount to be assessed was. In the absence of any proof that the amount assessed was in fact too large, and considering that the charter in no way provides as to the manner of ascertaining the actual cost of the improvements, the trial court was not authorized to find that the city engineer and assessors could not and did not ascertain the cost with reasonable certainty, or that any injustice was done to the plaintiff in fixing the amount to be assessed.

Section 83 of the charter, as amended in 1898 by chapter 199, and in 1899 by chapter 289, provides that:

"No action or proceeding to set aside, cancel or annul any assessment made for local improvements under any of the provisions of the act shall be maintained by any person, unless such action or proceeding shall have been commenced within thirty days after the delivery of the assessment roll, and warrant for such local improvement, to the city treasurer, and notice given by him in the official newspaper of the city of the receipt thereof, and unless within thirty days an injunction shall have been procured by such person from a court of competent jurisdiction restraining the common council from issuing the assessment bonds heretofore provided to be issued for such assessment."

In this case the assessment rolls and warrant were delivered to the city treasurer December 26, 1899, and notice was given by him in the official newspapers of the city January 4, 1900, of the receipt of the roll and warrant, and bonds were issued on account of the improvements in question March 14, 1900, and thereafter sold, pursuant to section 83 of the charter, and this action was not commenced until March 29, 1900, and no injunction has ever been procured restraining the issue of the bonds. The provision of section 83 of the charter quoted in terms applies to an action of this kind, and, if effect is given to it, this action cannot be maintained, because the action was not brought within the time provided by the statute. The matter of the failure to procure an injunction is of no consequence. The procuring of such injunction being a matter beyond the control of the plaintiff and subject to the action of the court, the plaintiff, even if required to apply for, could hardly be required to procure, the same.

It is claimed that these provisions of section 83 are unconstitutional, within the rule laid down in Parmenter v. State, 135 N. Y. 154, 31 N. E. 1035; but the court in that case was considering rights of action already accrued when the statute was passed, and not rights of action to accrue after the statute was passed. There is very good reason for this provision. When applied, it will be known before the bonds are issued and sold whether there is to be litigation as to the validity thereof, and if no action is begun within the time prescribed the bonds will sell better and more advantageously to the city. We are not inclined to hold the provisions unconstitutional.

Two acts have been passed by the legislature since the entry of the judgment in this case purporting to legalize this assessment. Chapters 28 and 133, Laws 1901; the first taking effect February 19, 1901, and the second March 21, 1901. These acts only assumed to cure irregularities and omissions in the proceedings on the part of the city officials, and they are operative only so far as they relate to such acts as the legislature might have provided, before the proceedings were taken or the assessment was made, should be done or might be omitted. Hatzung v. City of Syracuse, 92 Hun, 203, 36 N. Y. Supp. 521. This court then said:

"The general and established rule in relation to curative statutes seems to be that, if the thing omitted, which constitutes the defect sought to be removed, is something which the legislature might have dispensed with by a previous statute, it may do so by a subsequent one. If the irregularity consists in doing some act, or doing it in the mode which the legislature might have made immaterial by a previous statute, it may do so by a later one."

These acts would seem to cure the irregularities and omissions which are found to have occurred in the proceedings and in the assessment in this case. We do not think the judgment in this case deprives the city of the benefit of these statutes.

We have at some length considered the questions arising in this case. These cases are always troublesome, and the questions therein more or less difficult. It would be better for city officials to follow more literally the provisions of the statutes in conducting these proceedings and making these assessments for local improvements, but the courts are not inclined to set aside such assessments when the improvements are solicited by the property owners, including the party attacking the assessment; where the city has incurred obligations and expended money in making the improvements; where the property owners have stood by and seen the proceedings conducted, the improvements made, the liability incurred, and money expended, and the assessment made; where they have had and are enjoying the benefits of the improvement, and seek to be relieved from assessment and taxation for the benefits received by them, and leave the taxpayers at large to bear the burden which they should themselves endure. We do not regard this case as one requiring the court to sustain the plaintiff's contention and to set aside this assessment. We think the trial court erred in directing the judgment appealed from.

The judgment should therefore be reversed, and a new trial ordered before another referee, with costs to the appellants to abide event. All concur.