# LOS ANGELES CEMETERY ASSOCIATION v. CITY OF LOS ANGELES.

## No. 19,028; February 11, 1893.

### 32 Pac. 240.

**Dedication of Street—What Constitutes.**—In an action to quiet title to a strip of land, it appeared that plaintiff company filed for record a map of its land, platted as a cemetery, on which map the strip in question, forty feet wide along the west side of the tract, was left blank, with an entrance indicated therefrom into the cemetery. Subsequently, in cutting the land up into cemetery lots, the company left another strip, twenty feet wide, adjoining the former strip, and the whole was known as "E. Avenue," which was used by the public for three years without objection. Held, that the facts showed an intention to dedicate the strip to the public for street purposes.

**Dedication of Street—Acceptance.—User by the Public of a Strip** of land as a street for four years is sufficient to show acceptance of a previous offer to dedicate the land for street purposes.[1]

APPEAL from Superior Court, Los Angeles County; Walter Van Dyke, Judge.

Action by the Los Angeles Cemetery Association against the city of Los Angeles to quiet title. Judgment for defendant. Plaintiff appeals. Affirmed.

A. H. Judson and M. C. Hester for appellant; C. McFarland for respondent.

BELCHER, C.—This is an action to quiet the plaintiff's title to a strip of land, forty feet wide and twelve hundred and thirty-six feet long, in the city of Los Angeles. The court below gave judgment for the defendant, from which, and from an order refusing a new trial, the plaintiff appeals. The facts found by the court are in substance as follows: On October 26, 1887, the plaintiff, a corporation, was the owner of a tract of land in the city of Los Angeles, which included the land in controversy, and on that day it filed for record a map of the tract, on which were delineated the usual plats and avenues of cemetery grounds, and along the southerly and westerly sides of which were left blank colored strips, forty feet in width, the one on the southerly side being now a portion of First street, and the one on the westerly side being the land in controversy. The map also showed that the only entrance to the cemetery was from the strip in controversy, and that the strip opened out at one end into First street, and at the other end into Broderick avenue, public streets of the city. About the time of the filing of this map, plaintiff planted along the easterly and inner line of the street in controversy a hedge fence, leaving an opening therein where the entrance to the cemetery was located, and also planted pepper trees for a short distance on each side of such entrance, which hedge fence is still intact, and is now, and

---

[1] Cited in Riley v. Buchanan, 116 Ky. 633, 63 L. R. A. 42, 76 S. W. 529, as supporting the general doctrine of the acceptance by the public being presumed from the long-continued use of the highway.

Cited in the note in 129 Am. St. Rep. 609, on what constitutes dedication to and acceptance of a public street.

has been since the year 1885, a good and substantial fence.   In 1885 plaintiff moved a fence which had been erected upon the outer or westerly line of the strip into the inner line thereof, and adjoining the hedge fence on the easterly side thereof. Sometime about the year 1885, the lands adjoining the strip in controversy on the west side were laid out in lots, and spaces between them for streets, and among other spaces was one twenty feet in width, the full length of and adjoining the said strip, and making therewith a sixty-foot strip, known as "Evergreen Avenue."   Previous to and since 1885, plaintiff has sold to divers persons a great number of lots in its cemetery, and the only carriage entrance thereto fronts on the strip of land in dispute, about midway between the north and south ends thereof.   Since the year 1885, the said strip of land has been continuously used and traveled by the public as a public street, which use has been with the knowledge and consent of plaintiffs.   On December 15, 1890, the city council of the city of Los Angeles duly passed an ordinance accepting all streets theretofore dedicated, or offered to be dedicated, by property owners for public use.   And, as conclusions of law, the court found that the said strip of land was a part and portion of a public street in the city of Los Angeles, known as "Evergreen Avenue"; that the plaintiff had no right to its possession; and that the defendant was entitled to its possession as a public street.   Judgment was entered in accordance with these conclusions.

In support of the appeal it is claimed that the findings that the plaintiff moved the fence which had been erected along the westerly line of the disputed strip in the year 1885; that the lands adjoining the strip on the west were laid out in lots, etc., about the same year; and that since that year the said strip had been continuously used and traveled by the public as a public street—were not justified by the evidence, in so far as the year named is concerned; and it is said that the evidence clearly shows that none of the acts referred to were done or commenced before the year 1887.   It is admitted that the fence on the south side of the tract was removed in 1885, and there was some evidence that the fence on the west side was removed about the same time, and that the use of the strip for public travel commenced shortly after the fence was taken away.   But whether the findings were right as to the

50

year named or not is, in our opinion, not material. The only real question is, Do the findings show a dedication of the strip, or offer to dedicate, for the purposes of a street, and an acceptance by the public? And if they do, it can make no difference whether the dedication or offer to dedicate was in 1885, or not till 1887.

It is further claimed that the first conclusion of law was erroneous and not justified, for the reason that the plaintiff, having been organized as a corporation for cemetery purposes, "had no power, directly or indirectly, to dedicate its land to the public for street purposes." This claim is sufficiently met and answered by the decision of this court, reported in 95 Cal. 420, 30 Pac. 523. That case was between the same parties as this, and the question involved related to the dedication of the forty-foot strip along the south side of the plaintiff's track. It was held that the dedication was made and accepted, and that the strip formed a part of First street.

It is also claimed that, admitting an offer to dedicate was made by the plaintiff, still there was no direct finding, and no sufficient evidence to show, that the offer was ever accepted by the public. The court found, as we have seen, that after the fence was removed, the strip was continuously used by the public as a public street, and with the knowledge and consent of the plaintiff. The correctness of the finding in this respect is not questioned, nor could it be here, there being ample evidence to support it. The user then commenced as early at least as 1887, and was continued up to the time of the trial in 1891. This was sufficient to show an acceptance without the formal ordinance passed by the city council in 1890. The question of the admissibility of that ordinance in evidence need not, therefore, be specially considered.

Did, then, the plaintiff intend to dedicate the strip to the public for street purposes? It is true that the law is well settled in this state and elsewhere that, where there is no grant in writing, a dedication of land can only be established by proof of acts on the part of the owner which manifest clearly and unequivocally the intention of the owner to make such dedication; but, in our opinion, the probative facts found do show acts and conduct on the part of the plaintiff from which the ultimate fact that there was an intention to dedicate the strip must necessarily result. If not, why was the strip

marked out on the map, extending the whole length of the tract, with an entrance therefrom into the part laid out for cemetery purposes? The surveyor who laid out the grounds and made the map says he was simply told to leave a forty-foot strip on the south and west sides, and "I supposed they were left for streets." And why did the owners of the adjacent land on the west leave an additional twenty-foot strip? Judson, who had been president of the corporation, testified that he was one of such owners, and that they "left twenty feet along there for street purposes. There is a twenty-foot strip left there." So, after the hedge had been growing for eight or ten years, why was the fence removed, and the strip, in connection with the additional twenty-foot strip, left open so that it could be used and traveled over by the public? And why was the public permitted to use the strips which had become known as "Evergreen Avenue" for more than three years at least without objection on the part of the plaintiff? It seems to us that these undisputed facts can be rationally accounted for only upon the theory that there was a clear intention to dedicate the strip for the purposes of a street.

The offer on the part of the plaintiff to prove that the fence was removed "because it had become out of repair, and for the purpose of using it in repairing the breaks in the hedge," does not require serious consideration. Surely, if the fence needed repairs, the repairs could have been made more cheaply and better where it had stood for eight or ten years than by moving the whole line of it a distance of about forty feet; and if there were breaks in the hedge, which does not appear, they could have been protected by the fence in its original location, as they had been ever since the hedge was planted in 1878. We see no error in the ruling of the court upon this offer. It follows, in our opinion, that the conclusions of the court below were warranted, and were correct, and that the judgment and order appealed from should be affirmed.

We concur: Haynes, C.; Vanclief, C.

PER CURIAM.—For the reasons given in the foregoing opinion the judgment and order appealed from are affirmed.