[Civ. No. 4061.   Second Appellate District, Division Two.—April 18, 1924.]

## M. HALL, Appellant, v. FAIRCHILD–GILMORE–WILTON COMPANY (a Corporation), Respondent.

[1] STREET LAW—CONVERSION OF PARK INTO HIGHWAY—DEDICATION.—Where land within a city is once dedicated for park purposes, it is beyond the authority of that city, or of the legislature, to thereafter withdraw it therefrom and make of it a public highway.

[2] ID.—PARKS—INCIDENTAL USES.—If the area of a park is used for buildings or activities of any character incidental to its enjoyment as a park, such use will be upheld by law, but the taking of a portion of the space of a park and devoting it to strictly highway purposes cannot be regarded as consistent with the original dedication, and is therefore void.

[3] ID.—DEDICATION—ACCEPTANCE—EVIDENCE.—If an owner of land has it surveyed and platted with the intended public use clearly indicated, allowing the public to so treat it, the offer to dedicate is sufficient; and no formal acceptance is necessary to complete the dedication of the property represented, but use of the land by the public for the purposes to which it was so dedicated is sufficient to show an acceptance.

[4] ID.—VOID ASSESSMENT—CURATIVE CLAUSE.—Where the city council is totally without jurisdiction to change the character of a public square or park to that of a public street, and the lien for the improvement thereof under the Vrooman Act is, therefore, void, the defect in the proceedings is not remedied by the curative clause in the Bond Act.

---

1. Power of legislature to authorize the use of a public park, square or common for purpose inconsistent with the purpose for which it was dedicated, note, 18 **A. L. R.** 1266.

What use of squares, parks or commons amount to diversion from the use for which they were dedicated, notes, 27 **L. R. A.** (N. S.) 938; 50 **L. R. A.** (N. S.) 465.

See, also, 18 **Cal. Jur.** 1019; 20 **R. C. L.** 651 et seq.

2.   See 20 **R. C. L.** 653, 655.

3.   Implied acceptance by public user of land dedicated to public use, note, 3 **Ann. Cas.** 792. See, also, 9 **Cal. Jur.** 54, 72.

Dedication of park or square by selling lots according to map or plat, notes, 17 **Ann. Cas.** 312; **Ann. Cas.** 1917B, 197. See, also, 9 **Cal. Jur.** 31; 8 **R. C. L.** 894.

4.   See 18 **Cal. Jur.** 796.

5.   See 18 **Cal. Jur.** 906.

[5] ID.—PARKS—MANAGEMENT AND CONTROL—DEVOTION TO UNAU-
THORIZED USE.—A city charter entrusting the board of park
commissioners with the "management and control" of park
property confers no authority upon the board of park commis-
sioners to destroy the subject of its trust, or to devote it to uses
other than that of enjoyment and recreation.

[6] ID.—DEDICATION AND ACCEPTANCE OF STREETS—EVIDENCE.—Where
streets ordered improved were named and shown on a certain map
of the city, filed in the office of the city engineer long before
and at the time of the institution of the street proceedings in
question, and on another map filed many years before in the
office of the county clerk, and reference to those maps was made
in the assessment and diagram, and in the bonds issued pur-
suant thereto, these circumstances, in addition to the fact that
the streets apparently existed regardless of the names applied
to them, were sufficient to warrant the conclusion that they
had become dedicated and accepted as public highways so as to
give the city jurisdiction to treat them as such and improve
them.

[7] ID.—ESTABLISHMENT OF OFFICIAL GRADES—TIME—DUE PROCESS.—
Where the ordinance officially establishing the grades of streets
to be improved, although not signed by the mayor until three
days after the passage of the resolution of intention, is adopted
by the city council prior to the passage of the resolution of
intention, and the official grade has been legally fixed at the
time of the first publication and before the posting of the
resolution of intention, the procedure has not been so defective
as to be without "due process"; and the defect is remedied
by the curative clause in the Bond Act.

[8] ID.—RIGHT TO LEGALIZE DIFFERENT PROCEDURE.—In the enact-
ment of the Vrooman Act the legislature had authority to permit
the fixing of a grade after adoption of the resolution of inten-
tion, and it therefore follows that it may by subsequent legisla-
tion legalize a procedure which it had the power to originally
direct.

---

6. Dedication of highways by maps or plats, note, 10 Am. St.
Rep. 189. See, also, 9 Cal. Jur. 71; 19 Cal. Jur. 23; 13 R. C. L.
24.

Implied acceptance of dedication of highway by public user,
notes, 57 Am. St. Rep. 749; 3 Ann. Cas. 792. See, also, 9 Cal. Jur.
73; 19 Cal. Jur. 26; 13 R. C. L. 28.

Presumption of dedication from user of highway, note, Ann.
Cas. 1914D, 335.

7. See 19 Cal. Jur. 163, 337.
8. See 18 Cal. Jur. 796.

[9] ID.—VOID ASSESSMENT—RETROSPECTIVE LEGISLATION.—Section 12¼ of the Vrooman Act, as amended in 1923, which provides for a reassessment whenever an assessment theretofore or thereafter issued for street work "is or shall be void, or unenforceable for any cause," is constitutional, and may be applied retrospectively to assessments issued prior to such enactment.

[10] ID.—CURATIVE LEGISLATION—JURISDICTIONAL DEFECTS.—While the legislature cannot legalize a street assessment which is void for failure to comply with the jurisdictional requirements made necessary by the state or federal constitution, a curative act may dispense with the steps which were not taken in such a proceedings if they were such that the legislature could in the original act have dispensed with them, or it may ratify acts done which were not embraced therein if it had authority to require that they be performed.

[11] ID. — REASSESSMENT — INTEREST — TIME. — Section 12¼ of the Vrooman Act, as amended in 1923, in providing that when a reassessment is issued interest shall be computed from the original date, is not unconstitutional or void.

[12] ID.—REASSESSMENT—LAW APPLICABLE.—Section 12¼ of the Vrooman Act, as amended in 1923, having been in effect at the time the judgment of the trial court was reversed on appeal and a reassessment ordered, the reassessment should be made in conformity with the provisions of such amended section.

---

(1) 20 C. J., p. 617, sec. 104.   (2) 18 C. J., p. 128, sec. 170. (3) 18 C. J., p. 58, sec. 43; p. 77, sec. 72; p. 78, sec. 73; p. 122, sec. 151.   (4) 28 Cyc., p. 1195.   (5) 18 C. J., p. 128, sec. 170. (6) 18 C. J., p. 85, sec. 85.   (7) 28 Cyc., p. 1195.   (8) 28 Cyc., p. 1195.   (9) 36 Cyc., p. 1121.   (10) 12 C. J., p. 1091, sec. 786. (11) 28 Cyc., p. 1197.   (12) 28 Cyc., p. 1192.

APPEAL from a judgment of the Superior Court of San Diego County. Edgar A. Luce, Judge. Reversed.

The facts are stated in the opinion of the court.

Herbert C. Kelly and Laurence H. Smith for Appellant.

Gibson, Dunn & Crutcher for Respondent.

Hartley Shaw, Frederick Baker and Arthur M. Elliss, *Amici Curiae.*                    ℭ

---

9. See 19 Cal. Jur. 318.
10. See 18 Cal. Jur. 796.
11. See 19 Cal. Jur. 318.
12. See 19 Cal. Jur. 320.

CRAIG, J.—After an opinion rendered by this court on appeal of the instant proceeding a rehearing was granted by the supreme court, which entered an order directing that the matter be retransferred here for such action as this court might deem proper in view of the amendment of section 12¼ of the Vrooman Act, passed in 1923 (Stats. 1923, p. 110). In other respects the opinion formerly written by this court must be regarded as having met with the approval of the supreme court. We shall therefore follow that opinion except for giving consideration to the point presented for the first time upon application for hearing before the supreme court, and which merely requires that we determine whether or not the act as it stood in 1921 (Stats. 1921, p. 563), or the amendment of section 12¼ of 1923, shall prevail in making the reassessment contemplated by our former opinion.

The action is one to quiet title to a number of lots in the city of San Diego.

In the defendant's answer it asserts the ownership of a lien thereon arising as the result of an assessment for the improvement of certain streets under the Vrooman Act. The trial court held that the lien was void because of the facts found, but concluded that the curative clause in the Bond Act remedied the defects in the proceedings as to the property against which bonds had been issued. A decree was entered accordingly, quieting plaintiff's title as to lots which had been assessed for less than twenty-five dollars, but holding that defendant was the owner of a valid lien in each instance where a bond had been issued. The plaintiff moved to set aside this latter part of the judgment, and to amend the conclusions of law pursuant to sections 663 and 663a of the Code of Civil Procedure, which motion was denied. Plaintiff thereupon appealed from so much of the judgment as declared the street bonds valid as above stated, and from the order denying the motion to modify the judgment.

The findings of the trial court detail the various steps which were taken in the assessment proceeding. It was found that the street improvement work in question was ordered to be done by the legislative body of the city of San Diego and generally that the proceeding was conducted under the Vrooman Act. "That portions of the ground

for the improvement of which said resolution of intention
No. 24453 made provision were at all times prior to No-
vember 27, 1918, part of that certain public square known
as Washington Square, and shown and designated as such
on said Pascoe map; that there has been no dedication,
opening, or setting apart for street purposes of said portion
of Washington Square, except by virtue of that certain
ordinance passed by the legislative body of said city, No-
vember 20, 1918, approved by the mayor of said city No-
vember 27, 1918." Here follows a copy of ordinance No.
7563 of the city of San Diego, where it is recited that the
board of park commissioners of said city had requested and
authorized the opening, naming and dedicating of certain
public ways along and over that certain public square in
Old Town in the city of San Diego, named and dedicated
Washington Square. That it was for the public interest
and convenience that such portions of said Washington
Square should be used by the public, and for public ways
and thoroughfares. It was then ordained: "That a strip
of land (describing strips lying along each side of said
square, and including) Ninety (90) feet in width off of
and along the southwesterly side of said Washington Square,
be, and the same is hereby dedicated and set aside as and
for a public way and thoroughfare, and the same shall be
known as and is hereby named San Diego Avenue."

The court also found: "That the portion of said Wash-
ington Square desigated by said ordinance No. 7563 as pub-
lic streets constitutes more than sixty (60) per cent of
the total area of said public square. That the portion of
said Washington Square declared by said ordinance No.
7563 to be a portion of San Diego Avenue was included by
said resolution of intention No. 24453, as a portion of San
Diego Avenue, to be improved, without describing it other
than as San Diego Avenue, and without any reference to
Washington Square."

In addition to these findings relied upon by appellant is
another as follows: "That no resolution has ever been
passed or adopted by the legislative body of said city, ac-
cepting, naming or defining the boundaries of said Tay-
lor Street, or the portions of said San Diego Avenue (ex-
cepting said ordinance No. 7563), directed to be improved
by said resolution of intention; but said streets are shown

upon said Pascoe Map of Old San Diego, but no definite or certain boundary line is shown upon said map for a portion of said San Diego Avenue, which portion of said Avenue was included by said resolution of intention No. 24453 among those to be improved thereunder.''

The charter of the city of San Diego which was in force at the time the rights of the parties to this proceeding accrued and subsequent thereto contained the following provisions: ''All parks, places and squares now open and dedicated to the public use, or which may hereafter be opened or dedicated to the public use, shall be under the exclusive control and management of the said Board of Park Commissioners, with power to lay out, regulate and improve the same.''

Appellant attacks the proceeding upon numerous grounds, but on account of the views hereinafter expressed, a single fundamental proposition involved renders it necessary to reverse the judgment and order from which appeal is taken.

If for any reason the proceeding was invalid as to the taking of a portion of Washington Square for street purposes, and if this invalidity was of such character that it cannot be remedied by the curative clause of the act of 1917, then the entire assessment was void, and the appellant must prevail. *City of Moline* v. *Greene*, 252 Ill. 475 [37 L. R. A. (N. S.) 104, 96 N. E. 911]; *City of Chicago* v. *Hill*, 251 Ill. 502 [96 N. E. 223]: ''The 17-foot 'parkway' here in question is as much a part of the improvement as any other part of the land to be taken. The striking from the ordinance and petition of the description of this 17-foot 'parkway' would make the improvement remaining in the ordinance another and different improvement from that originally provided for therein.''

[1]  We think it is clear that the city council of San Diego was utterly without jurisdiction to take over sixty per cent of Washington Square, a public park, and make of it a highway, thus entirely withdrawing that portion of it from the purposes of its original dedication. Numerous authorities sustain the proposition that when land is once dedicated for park purposes it is beyond the authority of a city, or even the legislature, to withdraw it therefrom.

The city council could not devote property purchased for a park to the improvement of a public street, and the as-

sessment of such property for street improvements would be invalid. (*Powell .v. Walla Walla,* 64 Wash. 532 [117 Pac. 389].)

*Warren* v. *Lyons City,* 22 Iowa, 351, is in point.   There the state legislature enacted a statute "to enable incorporated towns and cities to acquire, hold, improve and dispose of lands for public squares, parks, commons, and cemeteries," and provided that "incorporated towns and cities within or without whose limits, lands have been or may be dedicated to the public for the uses mentioned in the preceding section of this act, shall have the entire control of the same, and shall have power in case such lands are deemed insufficient or unsuitable for the purpose for which they originally or may hereafter be granted, to dispose of and convey the same; and conveyances executed in accordance with this act shall be held to extinguish all rights and claims of any such town or city to such land, existing prior to such conveyance." An ordinance of Lyons City, adopted in pursuance of such statute, was under consideration by the supreme court, which held: "It must be that if vested in the city for a particular purpose, the legislature cannot vest it for another; that, when the dedicator declared his purpose by the plat, the land cannot be sold or used for another and different one; that while the corporation took the premises as trustees, it took them with the obligations attached as well as the rights conferred; that while the legislature might give control and management of these squares and parks to the municipal corporations, it cannot authorize their sale and use for ·a purpose foreign to the object of the grant.   Without quoting, we cite the following cases: *Trustees of Watertown* v. *Cowen,* 4 Paige, 510, 2 Strange, 1004; *Commonwealth* v. *Alberger,* 1 Whart. 469; *Pomeroy* v. *Mills,* 3 Vt. 279; *Abbott* v. *Mills,* 3 Vt. 521; *Adams* v. *S. & W. R. R. Co.,* 11 Barb. 414; *Fletcher* v. *Peck,* 6 Cranch, 87 [3 L. Ed. 162, see, also, Rose's U. S. Notes]; *Godfrey* v. *City of Alton,* 12 Ill. 29; Sedgwick's Constitutional and Statute Law, 343, 344; *Haight* v. *City of Keokuk,* 4 Iowa, 199; *Grant* v. *City of Davenport,* 18 Iowa, 179; *Le Clercq* v. *Trustees of Gallipolis,* 7 Ohio, 217; *Commonwealth of Indianapolis* v. *Cross,* 7 Ind. 9; *Rowan's Exr.* v. *Portland,* 8 B. Mon. 232; *Augusta* v. *Perkins,* 5 B. Mon. (Ky.) 437." (See, also, *Douglas* v.

*Montgomery,* 118 Ala. 599 [43 L. R. A. 376, 24 South. 745];
*Chicago* v. *Ward,* 169 Ill. 392 [61 Am. St. Rep. 185, 38
L. R. A. 849, 48 N. E. 927]; *Hopkinsville* v. *Jarrett,* 156
Ky. 777 [50 L. R. A. (N. S.) 465, and note, 162 S. W. 85];
*Cadman* v. *Crocker,* 203 Mass. 146 [25 L. R. A. (N. S.) 980,
89 N. E. 177]; *Rowzee* v. *Pierce,* 75 Miss. 846 [65 Am. St.
Rep. 625, 40 L. R. A. 402, 23 South. 307]; *Hoboken M. E.
Church* v. *Hoboken,* 33 N. J. L. 13 [97 Am. Dec. 696];
*Church* v. *Portland,* 18 Or. 73 [6 L. R. A. 259, 22 Pac. 528];
*Sturmer* v. *Randolph County Court,* 42 W. Va. 724 [36
L. R. A. 300, 26 S. E. 532].)

[2]    We are not unmindful of the rule that if the area
of a park is used for buildings or activities of any character
incidental to its enjoyment as a park, such use will be up-
held by law, but we know of no authority which has held
that the taking of any portion of the space of a park and
devoting it to strictly highway purposes can be regarded
as consistent with the original dedication.    On the contrary,
the following cases hold that such action is inconsistent
with the use of land for park purposes, and is therefore
void: *Mulvey* v. *Wangenheim,* 23 Cal. App. 268 [137 Pac.
1106]; *City of Moline* v. *Greene,* 252 Ill. 475 [37 L. R. A.
(N. S.) 104, 96 N. E. 911]; *Price* v. *Thompson,* 48 Mo.
361; *Hamilton* v. *Morrison,* 18 U. C. C. A. 221.    As was
well said in *City of Moline* v. *Greene, supra:* "The case
must be controlled by legal principles, and not by consider-
ing the practical effect of allowing the taking of the land
in this particular case.    If it be held appellant has au-
thority to take part of the property, it would necessarily
require holding that all of the property could be taken by
virtue of the same authority if that were sought to be
done."    (See, also, *Riverside* v. *MacLain,* 210 Ill. 308
[102 Am. St. Rep. 164, 66 L. R. A. 288, 71 N. E. 408];
*Spires* v. *City of Los Angeles,* 150 Cal. 64 [87 Pac. 1026].)
In the instant case the findings indicate that more than
sixty per cent of the area of Washington Park is included
by the ordinances in question for proposed street purposes.

It has been said by text-writers, and held by the courts
of last resort, that a distinction is to be made between cases
where a public square is dedicated without restriction and
cases where the dedication is restricted to a particular pur-
pose.    That in the former case any reasonable public use

may be made of the park, but that in the latter it must be devoted to the particular purpose indicated by the dedicator.

[3]  As to what constitutes dedication, it is well settled that if an owner of land has it surveyed and platted with the intended public use clearly indicated, allowing the public to so treat it, the offer to dedicate is sufficient.  (*Los Angeles Cemetery Assn.* v. *City of Los Angeles,* 3 Cal. Unrep. 783 [32 Pac. 240] ; *City of Los Angeles* v. *McCollum,* 156 Cal. 148 [23 L. R. A. (N. S.) 378, 103 Pac. 914] ; *San Francisco* v. *Burr,* 4 Cal. Unrep. 634 [36 Pac. 771].) And that no formal acceptance is necessary to complete the dedication of the property represented (*San Leandro* v. *LeBreton,* 72 Cal. 170, 175 [13 Pac. 405]) ; but use of the land by the public for the purposes to which it was so dedicated is sufficient to show an acceptance.  (*People* v. *Davidson,* 79 Cal. 166 [21 Pac. 538] ; *People* v. *O'Keefe,* 79 Cal. 171 [21 Pac. 539] ; *Hall* v. *Kauffman,* 106 Cal. 451 [39 Pac. 756] ; *Smith* v. *San Luis Obispo,* 95 Cal. 463 [30 Pac. 591].)

Under these and many other authorities which it is unnecessary to accumulate, the uses to which Washington Square has so long been devoted would seem to establish its character as a pleasure ground, beyond question, as the purpose for which it was dedicated; and this would be so under any form of dedication, and leaving out of consideration the fact that the park had been officially and formally dedicated.

In *Spires* v. *City of Los Angeles,* 150 Cal. 64 [11 Ann. Cas. 465, 87 Pac. 1026], the trial court found that the land there in question had been set apart and dedicated by the city authorities of Los Angeles for the use of the public as a public park, that for many years it had been maintained and used by the people of the city exclusively as a park.  An injunction was granted by the superior court restraining the construction of a library thereon, and in reversing the judgment and order the supreme court unanimously held:

"The corporation is in the position of a trustee, and the question is whether in building a museum and library it is improperly executing a trust.  The primary object of the trust is to provide a place of enjoyment and recreation;

nothing is improper which conduces to that object, and we ought not to quarrel with anything which the corporation, in a reasonable exercise of their discretion, consider conducive to it. . . . It appears from the evidence set forth in the bill of exceptions accompanying the appeal that it is the purpose of the city to provide rooms therein as a meeting place for the board of library directors of such city, and that application has been made to such board of directors to provide rooms therein for the board of education. As far as the board of directors is concerned, this would seem permissible on account of their control of the library. But as to the board of education this cannot be done. The library building can be used for strictly library purposes only, and cannot be devoted to the establishment of municipal offices therein or used for municipal administration purposes other than as indicated relative to the board of library directors.

"If any part of such building could be used for one administration purpose, it might gradually be devoted to another. If one municipal board or municipal officer of the city having no direct relation to the library can be located therein, so may another, and so the building which the city has a right to erect as a library building solely in aid of the public enjoyment of the park may be gradually invaded for administration purposes and ultimately devoted to those purposes."

[4] It is too obvious for argument that if the council was totally without jurisdiction to thus change the character of Washington Square, the curative act to which reference is made can have no application. It does not purport to apply to such instances. If the ordinance of the city council, purporting to dedicate as streets portions of the park formerly dedicated to park purposes only was void, the spaces sought to be used for street purposes are still parts of Washington Square.

[5] It may be said that the board of park commissioners is entrusted by the city charter with the "management and control" of the park property, and that it appears from the findings that this board requested the city council to adopt the ordinance. However, this charter provision confers no authority upon the board of park commissioners to destroy the subject of its trust, or to devote it to uses other

than that of enjoyment and recreation. Its authority is merely that of a trustee, invested with limited jurisdiction, having imposed upon it the duty to protect parks within its management and control, which should at the same time compel such board to protest, rather than instigate, usurpation of authority over parks of the city by another body, or pass its trust property into the street department. In *M. E. Church* v. *Mayor, etc.,* 33 N. J. L. 13 [97 Am. Dec. 696, 700], it was said:

"The power of the local corporate authorities is vested in them only as the representatives of the public, and for the protection and regulation of the public use. They cannot sell the lands so dedicated, nor release or extinguish the uses for which they were dedicated, nor employ them in any way variant from the purposes for which they were designed. But within the limits of the purposes and uses for which the dedication is made to regulate the use, the authority of the local corporate authorities is unlimited, against which no mere private right can be set up. (*Commonwealth* v. *Alburger,* 1 Whart. 469, 485; *Ring* v. *Shoneberger,* 2 Watts, 23, 25 [26 Am. Dec. 95]; *Commonwealth* v. *Borman,* 3 Pa. St. 203; *Commonwealth* v. *Bush,* 14 Pa. St. 186; *Langley* v. *Gallipolis,* 2 Ohio St. 107; Washburn on Easements, 155, 156; 2 Smith's Lead. Cas. 232, 241, 242; *Still* v. *Trustees of Lansingburg,* 16 Barb. 107; *Alves* v. *Town of Henderson,* 16 B. Mon. 169.)"

The powers of the board of park commissioners of San Diego extend only to the "exclusive control and management" of parks, places and squares, "with power to lay out, regulate and improve the same," and this express authority could by no stretching of the rules of construction be held to include a complete annihilation of the trust property with the regulation and improvement of which they are charged.

We now proceed to a consideration of appellant's points numbered in his brief two to seven inclusive, a ruling upon which is rendered necessary because a defect in the proceeding of such a nature as to deprive the property owner of his property rights without due process of law would so nullify the assessment as to place it beyond the power of the curative provision of the statute to validate and thus permit a reassessment to be made.

[6]    It is insisted that the streets ordered improved had not been officially accepted or named at the time of the passage of the resolution of intention. As has already been pointed out, a technical formal offer and acceptance is not requisite to dedication of a public street. The findings of the trial court show that these streets were named and shown on the Pascoe map of old San Diego, filed in the San Diego city engineer's office, long before and at the time of the institution of the proceedings in question, and on the map of Middleton, filed in the San Diego county clerk's office in 1874, reference to which maps was made in the assessment and diagram, and in the bonds issued pursuant thereto. We think that these circumstances, in addition to the fact that the streets apparently existed regardless of the names applied to them, were sufficient to warrant the conclusion that they had become dedicated and accepted as public highways so as to give the city jurisdiction to treat them as such and improve them.

[7]    The remaining defects in the improvement proceedings assigned in appellant's points numbered three to seven inclusive, revolve around the fact that the grades had not been officially established at the time of adopting the resolution of intention, and it is argued that since the resolution did not in this respect describe the work contemplated, the property owners affected did not receive the statutory notice, and were deprived of the guaranties afforded by "due process." The city council adopted the grade ordinance on April 14th thereafter, on April 21st, it passed the resolution of intention; on April 24th the mayor approved the grade ordinance; and the work was ordered in June. No case cited by appellant requires more than a substantial compliance with the constitutional due-process provisions. A failure to follow technically the procedure outlined by the statute in each detail is not fatal to the proceeding if steps calculated to protect the property owners against deprivation of their property without due process have been taken. The purpose of the resolution of intention is to initiate the proceeding and be the basis of notice to the property owners of the improvements about to be made. Such notice results, not from the mere passage of the resolution of intention, but from the publication and posting of it. It appears that at the time of the first pub-

lication and before posting of the notice an official grade had been legally fixed. The grade ordinance had passed a reading before the resolution of intention was introduced; it was passed, and became effective before the work was ordered. Under these circumstances no substantial right of the property owner was violated. Those interested were given ample information concerning the general character of the improvement, and the particular kind of improvement, which is the purpose for which a resolution of intention is contemplated by statute. (*Chase* v. *Trout*, 146 Cal. 350 [80 Pac. 81].) For the purposes of this appeal it is not necessary that we pass upon the issue argued at considerable length in the briefs as to whether or not the establishment of grades is sufficient to comply with the statute if the grade ordinance be introduced before the passage of the resolution of intention and be passed and become effective before the work is ordered. While this is the situation presented in the case at bar, we need only hold, as we do, that under such circumstances the procedure has not been so defective as to be without "due process." Upon this assumption we have no difficulty in agreeing with the trial court that the curative clause in the act remedied such defects in the proceeding as are claimed by appellant to exist as a result of the fact that the grades had not been officially established when the resolution of intention was adopted.

*Fair* v. *Buss,* 117 Iowa, 227 [90 N. W. 527], involved public highways constructed by a board of supervisors without giving any notice to resident land owners as required by the statute. The plaintiff there questioned both the constitutionality of a curative act, and the legality of a notice published pursuant thereto. The supreme court of Iowa said:

"It is conceded that the legislature may legalize any act which it might lawfully have made the law in the first instance, but it is said that it could not provide for such a notice to nonresidents as was published in this case, and that it cannot legalize a void act. That it may legalize a void act has been repeatedly held by this court. (*Richman* v. *Supervisors,* 77 Iowa, 513 [14 Am. St. Rep. 308, 4 L. R. A. 445, 42 N. W. 432]; *Tuttle* v. *Polk,* 84 Iowa, 12 [50 N. W. 38]; *City of Clinton* v. *Walliker,* 98 Iowa, 655

[68 N. W. 431].) It may be conceded that some notice in cases of this kind is required under the constitution, even if not provided for by statute, but it is the general holding that the notice is sufficient if it describes the location of the road and indicates the nature of the proceedings and states the time when and place where the interested persons must appear to protect their rights, even if the owner's name is not given in the notice. (2 Lewis on Eminent Domain, 2d ed., sec. 367, and cases cited in note 27; *McIntire* v. *Mamie,* 93 Ind. 193; *Gravel Road Co.* v. *State,* 105 Ind. 37 [4 N. E. 316].) And see *Wilson* v. *Hathaway,* 42 Iowa, 173. If this is true, it follows that just such a notice as was given might have originally been prescribed by the legislature, and that the legalizing act in question is valid so far as this question is concerned, and the owner of the land cannot complain that his property has been taken without due process of law.''

There is no contention in the case now before us that the grade was not subsequently established, and the streets completed. The curative act of 1921 requires a reassessment in all cases where the original assessment was void or unenforceable because of irregularities or illegalities in the proceedings, and ''the true intent and meaning of this section is to make the cost and expense of work or improvement made through an attempted compliance with this act, payable by the real estate benefited by such work or improvement by a reassessment therefor.'' **[8]** Manifestly in the enactment of the Vrooman Act the legislature had authority to permit the fixing of a grade after adoption of the resolution of intention, and it therefore follows that it may by subsequent legislation legalize a procedure which it had the power to originally direct. Appellant quotes extensively from the opinion of the supreme court in denying a rehearing in *Beck* v. *Ransome-Crummey Co.,* 42 Cal. App. 674 [184 Pac. 431]. In that case it was held that uniformity in the administration of justice is a substantial right, and that failure to furnish the information required by statute in a resolution of intention, or in the summons in an action at law, affords no notice, and consequently confers no jurisdiction. It is there said: ''The requirement of the statute is as positive in regard to the reference to the map as that of section 407 of the Code of Civil Procedure that the sum-

mons must contain a notice that unless the defendant appears the plaintiff will take judgment or apply to the court for other relief demanded in the complaint. These requirements are mandatory and jurisdictional in the one case as in the other.'' Quotation from the opinion in that case effectively answers appellant's argument, for while it affirms the authority of the legislature to prescribe a formal mode of procedure, it does not purport to hold that such jurisdictional steps would be necessary had the legislature otherwise provided; and the inevitable conclusion therefore is that the legislature may lawfully ordain retrospectively that other, or more, or less information shall appear in a resolution of intention. ''Judge Cooley, in his work on Constitutional Limitations, at page 457, states concisely the rule on this subject, thus: 'If the thing wanted or failed to be done, and which constitutes the defect in the proceedings, is some thing the necessity for which the legislature might have dispensed with by prior statute, then it is not beyond the power of the legislature to dispense with it by subsequent statutes; and if the irregularity consists in doing some act, or in the manner or mode of doing some act, and which the legislature might have made immaterial by prior law, it is equally competent to make the same immaterial by a subsequent law.' '' (*Gordon* v. *San Diego,* 101 Cal. 522 [40 Am. St. Rep. 73, 36 Pac. 18]. See, also, to the same effect, 17 Corpus Juris, at page 402; *Thompson* v. *Lee,* 3 Wall. (U. S.) 327, 331 [18 L. Ed. 177, 178, see, also, Rose's U. S. Notes] ; *Madison* v. *Commissioners,* 34 Me. 592; *State* v. *Bruggerman,* 31 Minn. 493 [18 N. W. 454] ; *Parker* v. *Van Houston,* 7 Wend. (N. Y.) 145; *L. H. & St. L. Ry. Co.* v. *Commonwealth,* 104 Ky. 35 [46 S. W. 207].) Appellant expressly bases his exceptions to the resolution of intention and other alleged irregularities upon the ground that they were ''defects in the proceedings,'' and the operation of the statutory provisions herein quoted being directed at irregularities and illegalities in the proceedings, they were thereby cured.

Respondent contends that this court should direct a reassessment of such of the lots as were subject to assessment, because abutting owners benefited by the improvement, and should pay therefor. When the appeal was last before us for consideration our attention was called to sec-

tion 12¼ of the Vrooman Act, Statutes of 1921, at page 563, from which respondent quoted in part in support of his position, as follows: ''Third—Whenever any court of competent jurisdiction in any suit to set aside the lien of any assessment or of any bond representing any assessment, or in any suit to quiet title against the lien of any such assessment, or bond, shall in its judgment decree such assessment or bonds to be void, or unenforceable, then it shall in and by its decree direct the making of a reassessment to cover the assessments involved in such suit.'' In 1923 this section was amended so that in lieu of the words ''for want of sufficient authority for its issuance, or from irregularities, or illegalities in the proceedings,'' the words ''for any cause'' were substituted, so that a reassessment is required by the statute when the original assessment shall have been found to be void ''for any cause.'' It is apparent that upon the issue as to whether or not a reassessment should be directed, what was said in our former opinion has the same application to the provision under consideration since the amendment of 1923 as to that of 1921.

This action was instituted May 10, 1920, to set aide an assessment dated and recorded March 25, 1920, but respondent argues that the amendment is retroactive, and that it is the duty of this court, should it reverse the judgment by holding the assessment void, to order the making of a reassessment to cover the expense of building the streets. We have held that inasmuch as the strip carved from the park should not be devoted to street purposes, it still constituted a portion of the park property, and it is therefore obvious that none of the work performed or expense incurred upon that particular part of the improvement can be said to have benefited any of the lots abutting thereon.

[9] However, appellant has insisted that if a reassessment be made it should be made pursuant to the provisions of the act of 1913 (Stats. 1913, p. 845), and not that of 1921 or 1923, it being claimed that the latter cannot be applied retroactively. We believe that a reassessment is necessary, and that the act of 1923, and not that of 1913, must be followed in levying it. The provisions of the statute of 1923 above quoted are sufficient authority for the

conclusion that a reassessment should be made, unless that law cannot be given a retrospective application.

The supreme court in *Baird* v. *Monroe*, 150 Cal. 560 [89 Pac. 352], held that the rule that a statute should not be construed to operate retroactively unless the legislative intention that it should so operate is clearly apparent, cannot apply where it is essentially a curative act, intended to give effect to past transactions which are ineffectual because of neglect to comply with some requirement of law. Hence, inasmuch as the provision here involved is essentially of a curative character, it must be held to operate upon assessments begun before as well as those commenced after its enactment. That this was the intention of the legislature is clearly indicated by the terms of the statute itself. The opening provision of the section of the statute of 1921, a portion of which is quoted above, reads as follows:

"Sec. 12¼. Whenever any assessment *heretofore issued* or which may be hereafter issued is or shall be void, or unenforceable, for the want of sufficient authority for its issuance or from irregularities, or illegalities in the proceedings, or if bonds shall have been, or shall be issued to represent any assessment and such issuance shall not have been, or shall not be effective through the curative provisions thereof to make them valid and enforceable, then, in any of such events a reassessment therefor shall be issued." (Italics ours.)

This language does not admit of doubt as to the intent of the legislature. That such a provision is valid is not seriously contested by respondent, and the proposition has been decided affirmatively by well-considered cases in other jurisdictions. Among these are, *Protestant Foster Home of Newark* v. *Mayor, etc.*, 52 N. J. L. 138 [18 Atl. 572]; *Brown* v. *City of Silverton*, 97 Or. 441 [190 Pac. 971]; *Conde* v. *Schenectady*, 164 N. Y. 258 [58 N. E. 130]; *Frederick* v. *Seattle*, 13 Wash. 428 [43 Pac. 364].

Appellant cites *Chapman* v. *Jocelyn*, 182 Cal. 294, 297 [187 Pac. 962], to sustain the claim that all such legislation is retroactive, and argues that any reassessment here should be made under the statute of 1913. That case, while construing provisions of the Vrooman Act, is not one involving reassessment. It decides that a street assessment is a contract, and that the provisions of the statute in force when

it was made must be followed in so far as they prescribe the manner of enforcement of the contract; also that to hold otherwise would amount to an impairment of contract. In the instant case the street assessment contract is void, but under the curative provisions of the law a new one is to be made. In creating this enactment the legislature has legalized transactions which were ineffective on account of noncompliance with the law, and in doing so it had full authority to provide conditions on which the invalid acts should become valid, and to give such provision a retrospective effect, or even to make it retroactive.

Argument of appellant upon the rehearing is based wholly upon that portion of the former opinion providing for a reassessment under the act of 1921, appellant contending that the right to reassessment was a vested right incidental to the ownership of street bonds, and that the rights of all parties were definitely fixed by the law existing at the time the original bond or assessment was issued. It is said that the amendment of 1923 is not a reassessment statute, but a "mere subterfuge" to avoid constitutional limitations; that the act of 1913 provided for a totally new assessment, and that the latest act seeks merely to cure defects in the original assessment and to validate it as of its original date. Appellant therefore asserts that notwithstanding the plain legislative intention to make the amendment retroactive, it should be declared unconstitutional in so far as bonds or assessments in existence before its passage are concerned, and therefore void and inapplicable as to the street bonds in question.

Respondent concedes that a rehearing is essential, since through inadvertence the subsequent amendment of April 30, 1923 (Stats. 1923, p. 110), was overlooked, and asserts that it is controlling as to the assessment ordered herein. To determine the question thus presented it is necessary that certain points raised by appellant in attacking the constitutionality of the amendment of 1923 be passed upon, since if his contention is correct, the reassessment cannot be made under this statute.

As we have observed, section 12¼ of the act of 1921 provides for reassessment whenever an assessment theretofore or thereafter issued for street work shall be "void, or un-

enforceable, for want of sufficient authority for its issuance or from irregularities, or illegalities in the proceedings," whereas in said section as amended by the act of 1923, a reassessment is directed to be made whenever any such assessment "is or shall be void, or unenforceable, *for any cause.*" (Italics ours.) All other language of the two enactments of section 12¼ is the same, so that if appellant's argument that the amendment of 1921 was unconstitutional be tenable, that of 1923 is subject to the same criticism.

Appellant's argument wholly fails to recognize the express language of the amendment, which provides, not for the validation of the original assessment, but for a reassessment when for the reasons therein specified the assessment first levied shall be held void or unenforceable. We held in the first instance that since the taking of a portion of Washington Square rendered the proceeding invalid in that respect, the entire assessment was therefore void, and it requires no citation of authority that a void assessment is ineffective for any purpose. The curative statute ratifies the proceedings authorizing improvements which rendered an assessment necessary, and directed a reassessment of properties benefited thereby for the amount of indebtedness incurred, with "interest thereon for thirty days after the date of recording the original assessment at the rate of seven per cent (7%) per annum," or from the date when payment became due. [10] The legislature cannot legalize a street assessment which is void for failure to comply with the jurisdictional requirements made necessary by the state or federal Constitution. (*Kelly* v. *Lunning,* 68 Cal. 430 [18 Pac. 335]; *Rollins* v. *Wright,* 93 Cal. 395 [29 Pac. 58]; *Haaren* v. *High,* 97 Cal. 445 [32 Pac. 518]; *Ramish* v. *Hartwell,* 126 Cal. 443 [58 Pac. 920]; and a reading of the act does not permit us to assume that it attempted to do so. We previously held herein, upon abundance of authority, that a curative act may dispense with the steps which were not taken in such a proceeding if they were such that the legislature could in the original act have dispensed with them, or it may ratify acts done which were not embraced therein if it had authority to require that they be performed. It has repeatedly been held that such legislation is constitutional.

[11]   A vigorous attack is launched against the provision that interest shall be computed from the original date, it being contended that "such a construction shocks all sense of justice," but the reply to this argument is that "it is in the plain wording of this act." It is not denied that properties which were benefited by the improvement began to enjoy that benefit when the work was completed, nor could it successfully be argued that compensation therefor was not due when the original assessment was recorded. That assessment being void, the initial mode of collection was rendered ineffectual, but substantive rights vested in the lien and not in the method of procedure; the latter was properly subject to legislative modification. (*Teralta Land Co.* v. *Shaffer,* 116 Cal. 523 [58 Am. St. Rep. 194, 48 Pac. 613].) The original act provided for interest upon unpaid assessments for street work, and since interest therefor was running at the time the amendment was enacted, no more onerous burden was created thereby; and no logical reason is advanced for deducting accrued interest from the amount concededly due, under such circumstances. It was within the power of the legislature to require that interest be paid from the date when the original assessment was recorded, and the fact that the amendments in question do in plain language so require leaves no room for construction.

[12]   The amendment of 1923 was in effect at the time the judgment of the trial court was reversed and a reassessment ordered (Dec. 7, 1923, 42 Cal. App. Dec. 668), and it has not since been modified or repealed. When such amendment became effective the mode of procedure and any right to remedies in pre-existing statutes ceased unless such mode or right was expressly reserved by the amendment, or had been perfected by steps taken under the former act. (*Hibernia Sav. & L. Soc.* v. *Hayes,* 56 Cal. 297; *Estate of Wixom,* 35 Cal. 320; *Tuttle* v. *Block,* 104 Cal. 443 [38 Pac. 109].) Proceedings subsequent to reversal upon appeal must conform to pertinent amendatory legislation now in effect (*Vanderbilt* v. *All Persons, etc.,* 163 Cal. 507 [126 Pac. 158]), and it is therefore ordered that the reassessment be made under the provisions of the statute of 1923.

The judgment is reversed, and the superior court is directed to amend its conclusions of law and enter a judgment to conform with the principles of law as announced in this opinion.

Finlayson, P. J., and Works, J., concurred.